UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

 **ORIGINAL**

------------------------------------------------------------------ x

ROBERT ALLEN & KEVIN SHARPE,



                                  Plaintiffs,

                   **COMPLAINT**

     -against-

THE CITY OF NEW YORK, UNDERCOVER OFFICER
# C0127, UNDERCOVER OFFICER # C0033,
DETECTIVE TOM STANTEN, shield # 3417, JOHN
AND JANE DOES 1-3,

**CV 10 - 5394**

<u>Jury Trial Demanded</u>

                        Defendants.

**COGAN, J.**

------------------------------------------------------------------ x

## PRELIMINARY STATEMENT

    1.    Plaintiffs bring this civil rights action against the City of New York and several members of the New York City Police Department ("NYPD") employed in Narcotics Borough Brooklyn South ("Brooklyn South Narcotics"). Plaintiffs allege that, on August 25, 2009, in the Flatbush section of Brooklyn, defendants violated their rights under 42 U.S.C. § 1983 and the Fourth and Sixth Amendments to the United States Constitution by falsely arresting them for a felony narcotics offense, using unreasonable force on them, illegally strip searching them, and making false allegations about them to the Kings County District Attorney's Office which deprived them of their liberty. The false criminal charges were subsequently adjourned in contemplation of dismissal. Plaintiffs seek compensatory and punitive damages, attorney's fees and costs, and such other and further relief as the court deems just and proper.

## JURISDICTION & VENUE

    2.    This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth and Sixth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

3.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to plaintiffs' claims occurred in this District, and because some or all of the defendants reside in this District.

## PARTIES

4.      Plaintiffs are United States citizens who presently reside in Brooklyn.

5.      The City of New York is a municipal corporation organized under the laws of the State of New York.

6.      Undercover Officer # C0127, Undercover Officer # C0033, Detective Tom Stanten and John and Jane Does 1-3 are members of the NYPD employed in Brooklyn South Narcotics.  Defendants were acting under color of state law and in their capacities as members of the NYPD at all relevant times.  Defendants are liable for directly participating in the unlawful acts described herein and for failing to intervene to protect plaintiffs from unconstitutional conduct.  The defendants are sued in their individual capacities.

## STATEMENT OF FACTS

7.      During the afternoon of August 25, 2009, plaintiffs entered a deli located on the corner of Rogers Avenue and Lenox Road in the Flatbush section of Brooklyn to purchase lunch.

8.      At all relevant times, plaintiffs did not commit a crime or violation, they were not wanted for a crime, and no law enforcement officer observed them acting in a manner which gave rise to probable cause.

9.      After plaintiff placed their lunch orders, three of the defendant officers -- two males and one woman -- entered the store and arrested plaintiffs for no reason.

2

10.    The officers, acting in concert, handcuffed and searched plaintiffs without cause.

11.    Plaintiffs were handcuffed excessively tight causing them pain and bruising.

12.    Plaintiffs complained about the tight cuffs but the officers did not loosen them.

13.    Plaintiffs asked the defendants why they were being arrested and defendants told them that they were going to be placed in a line-up to determine if they had committed an assault.

14.    Plaintiffs were taken outside, put into a police van and taken to the 67th Precinct.

15.    Inside the precinct, defendants, acting in concert, illegally strip searched plaintiff Allen in front of several officers and strip searched Sharpe privately.

16.    Plaintiffs were ordered to remove their clothes, squat, spread their buttocks and cough.

17.    Nothing illegal was found on plaintiffs.

18.    The defendants did not find illegal drugs on either plaintiff.

19.    The defendants did not find prerecorded buy money on either plaintiff.

20.    The strip searches of plaintiffs were illegal because plaintiffs had not committed a crime, because no officer had reasonable suspicion to believe that plaintiffs were hiding illegal items under their clothes, and because the search of Allen was unnecessarily conducted in front of several officers.

21.     While plaintiffs were confined in a cell after the strip searches, Detective Tom Stanten, Undercover Officer # C0127 and Undercover Officer # C0033 misrepresented in police reports that plaintiffs had committed a felony narcotics offense.

22.     The other defendants knew that police reports were being drafted containing false allegations but they failed to intervene to protect plaintiffs by, for example, reporting the matter to a supervisor.

23.     During the evening, one of the officers who was involved in the strip search of plaintiffs Allen, along with a second officer, took plaintiffs to Brooklyn Central Booking.

24.     Plaintiffs were held in cells in Brooklyn Central Booking which were severely overcrowded, extremely cold, filthy, unsanitary, and infested with pests. The toilets were covered in feces and urine and other types of human discharge and there were no beds or cots for plaintiffs and the other detainees to sleep on.

25.     While plaintiffs were confined in Brooklyn Central Booking, Detective Stanten misrepresented to the Kings County District Attorney's Office that plaintiffs had committed a felony narcotics offense.

26.     The other defendants knew that Stanten was commencing a false prosecution against plaintiffs, but they failed to intervene to protect plaintiffs by, for example, reporting the matter to an NYPD supervisor or to the Kings County District Attorney's Office.

27.     Detective Stanten commenced the bogus felony prosecution against plaintiffs by swearing to the accuracy of a criminal court complaint that contained the false allegations.

4

28.     Defendants' purpose in commencing a bogus prosecution against plaintiffs was to have plaintiffs convicted of and punished for crimes they did not commit and to improve Brooklyn South Narcotics' arrest statistics.

29.     On August 26, 2009, in the afternoon, plaintiffs were arraigned in criminal court on felony narcotics charges.

30.     The presiding judge released plaintiffs on their own recognizance and ordered them to return to court at a later date.

31.     Plaintiffs made numerous court appearances after their arraignment.

32.     Plaintiff Allen was residing in Texas when he was arrested and being prosecuted. Consequently, Allen had to fly to New York to attend each court appearance, cost him several thousand dollars. Also, Allen lost his job at Jamba Juice in Texas because he had to repeatedly take days off from work to travel to New York for court.

33.     On June 24, 2010, the criminal charges filed against plaintiff Sharpe were adjourned in contemplation of dismissal.

34.     On November 16, 2010, the criminal charges filed against plaintiff Allen were adjourned in contemplation of dismissal,

35.     Plaintiffs suffered damage as a result of defendants' actions. Plaintiffs were incarcerated for approximately 24 hours, deprived of their liberty during their incarceration and while the criminal charges were pending, and suffered emotional distress, mental anguish, fear, anxiety, embarrassment, and pain and injuries as described herein. Moreover, defendant Allen spent several thousand dollars flying from Texas to New York to attend court and he lost his position at Jamba Juice in Texas because he had to attend court numerous times.

## FIRST CLAIM

## (FALSE ARREST UNDER FEDERAL LAW)

36.    Plaintiffs repeat the foregoing allegations.

37.    At all relevant times, including August 25, 2009, plaintiffs did not commit a crime or violation, they were not wanted for a crime, and no law enforcement officer observed them acting in a manner which gave rise to probable cause.

38.    Despite plaintiffs' innocence, the defendants arrested plaintiffs.

39.    Accordingly, defendants are liable to plaintiffs under the Fourth Amendment for false arrest.

## SECOND CLAIM

## (UNREASONABLE FORCE)

40.    Plaintiffs repeat the foregoing allegations.

41.    Defendants' use of force upon plaintiffs in the form of excessively tight handcuffs was objectively unreasonable and caused plaintiffs pain and injury.

42.    Accordingly, defendants are liable to plaintiffs under the Fourth Amendment for using unreasonable force.

## THIRD CLAIM

## (ILLEGAL STRIP SEARCH)

43.    Plaintiffs repeat the foregoing allegations.

44.    Defendants' strip search of plaintiffs or their failure to intervene was illegal because plaintiffs had not committed a crime and no officer had reasonable suspicion to believe that plaintiffs were hiding illegal items under his clothes.

45.    The strip search of plaintiff Allen was also illegal because it was conducted in front of several officers, which was unnecessary and unreasonable.

6

46.     Accordingly, defendants are liable to plaintiffs under the Fourth Amendment for illegally strip searching them.

## FOURTH CLAIM

## (FABRICATION OF EVIDENCE AND DENIAL OF A FAIR TRIAL)

47.     Plaintiffs repeat the foregoing allegations.

48.     Detective Stanten misrepresented to the Kings County District Attorney's Office that plaintiffs had committed a felony narcotics offense.

49.     The other defendants knew that Stanten was commencing a false prosecution against plaintiffs, but they failed to intervene to protect plaintiffs by, for example, reporting the matter to an NYPD supervisor or to the Kings County District Attorney's Office.

50.     Defendants' false allegations resulted in plaintiffs being deprived of liberty because they were held in jail until their arraignments and were requited to appear in court on several occasions subsequent to their arraignments.

51.     Accordingly, defendants are liable to plaintiffs under the Sixth Amendment for fabrication of evidence and denying plaintiffs a fair trial.

## FIFTH CLAIM

## (*MONELL* CLAIM AGAINST THE CITY OF NEW YORK)

52.     Plaintiffs repeat the foregoing allegations.

53.     The City of New York is a "person" within the meaning of 42 U.S.C. § 1983.

54.     The City of New York, through a policy, practice or custom, directly caused the constitutional violations suffered by plaintiffs.

7

55.     Upon information and belief, the City of New York, at all relevant times, was aware that the defendants and other members of Brooklyn South Narcotics are unfit officers who have previously committed acts similar to those alleged herein, have a propensity for unconstitutional conduct and/or have been inadequately trained.

56.     Upon information and belief, the City exercised deliberate indifference by failing to take remedial action.  The City failed to properly train, retrain, supervise, discipline, and monitor the defendants and improperly retained and utilized them.

57.     The City's failure to act resulted in the violation of plaintiffs' constitutional rights as described herein.

WHEREFORE, plaintiffs demand a jury trial and the following relief jointly and severally against the defendants:

a.     Compensatory damages in an amount to be determined by a jury;

b.     Punitive damages in an amount to be determined by a jury;

c.     Attorney's fees and costs;

d.     Such other and further relief as the Court may deem just and proper.

DATED:     November 19, 2010
           Brooklyn, New York



RICHARD J. CARDINALE
Attorney at Law
26 Court Street, Suite 1815
Brooklyn, New York 11242
(718) 624-9391

8